FILED - GR
November 19, 2010 12:36 PM
TRACEY CORDES, CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY ___ad_ /____  SCANNED BY _____ / _____

## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **Angela Sumerix**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Hon. |
| v. | ) | |
| | ) | |
| **Consumer Recovery Associates** | ) | |
| **LLC**, a Virginia limited liability | ) | |
| company, and **James G. Fox, III**, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**1:10-cv-1149**

**Robert Holmes Bell**
**U.S. District Judge**

### Complaint

**I.      Introduction**

1.      This is an action for damages, brought against debt collectors for violating the

Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.,* and the Michigan

Occupational Code ("MOC"), M.C.L. § 339.901 *et seq.*

**II.     Jurisdiction**

2.      This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C.

§ 1331. This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28

U.S.C. § 1367. Venue in this judicial district is proper because the pertinent events took place

here.

**III.    Parties**

3.      Plaintiff Angela Sumerix is a natural person residing in Muskegon County,

Michigan. Ms. Sumerix is a "consumer" and "person" as the terms are defined and/or used in the

1

FDCPA. Ms. Sumerix is a "consumer," "debtor" and "person" as the terms are defined and/or used in the MOC.

4.      Defendant Consumer Recovery Associates LLC ("CRA") is a Virginia limited liability company, purportedly with offices at 2697 International Parkway, Parkway 4, Suite 270, Virginia Beach, Virginia 23452 and 135 International Boulevard, Unit 8, Greenville, South Carolina. The registered agent in Michigan for CRA is The Corporation Company, 30600 Telegraph Road, Suite 2345, Bingham Farms, Michigan 48025. CRA uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. CRA regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. In December 2008 CRA filed with the State of Michigan an Application for Certificate of Authority to Transact Business in Michigan for the stated purpose of "Debt Collection" and identifying defendant James Fox, III as the Member/Manager of CRA. CRA is a "debt collector" as the term is defined and/or used in the FDCPA. CRA is licensed (No. 2401002314) by the State of Michigan to collect consumer debts in Michigan, with defendant James Fox, III named in the license application as the Owner/Manager of CRA. CRA is a "collection agency" and "licensee" as the terms are defined and/or used in the MOC.

5.      Defendant James G. Fox, III is the owner, member and manager of CRA. By affidavit executed July 2, 2009 and filed in *Poirier v. Consumer Recovery Associates LLC,* Case No. 2:02-cv-02458, United States District Court, Eastern District of Pennsylvania, Mr. Fox attested that he is the CEO of CRA and has personal knowledge of the workings of CRA on account of his professional duties and responsibilities with CRA. Mr. Fox created the collection policies and procedures used by CRA and its employees, manages the daily collection operations

2

of CRA, and/or oversees and ratifies the application of the collection policies and procedures used by CRA and its employees. Mr. Fox, directly and indirectly, uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Fox, directly and indirectly, regularly collects or attempts to collect, debts owed or due or asserted to be owed or due another. Mr. Fox is a "debt collector" as the term is defined and/or used in the FDCPA. Mr. Fox is a "collection agency" and "licensee" as the terms are defined and/or used in the MOC.

**IV.    Facts**

6.    Check 'n Go is a company which loans small amounts of money to consumers by way of "payday" loans, also known as "cash advances," "deferred deposits," or "check loans" Regardless of the name, the loans all work like this: The consumer provides the lender with a post-dated check written on the consumer's bank account for the amount of the loan plus a fee. This fee translates into annual percentage rates typically averaging around 500%. The check is then held for one to four weeks (usually until the consumer's next payday) at which time the consumer redeems the check by paying the face amount, allows the check to be cashed, or pays another fee to extend the loan.

7.    In or about June 2005, Check 'n Go or a related company loaned several hundred dollars to Ms. Sumerix at an annual interest rate of more than 400 percent. Ms. Sumerix used the money to purchase goods and or services for personal, family or household purposes. The resulting debt was a "debt" as the term is defined and used in the FDCPA and MOC.

8.    The original creditor later claimed that Ms. Sumerix failed to pay the alleged debt in full.

3

9.      Ms. Sumerix disputes the alleged debt.

10.     Ms. Sumerix refuses to pay the alleged debt.

11.     The original creditor or a successor in interest hired CRA to collect the alleged debt from Ms. Sumerix.

12      Alternatively, CRA purchased the alleged debt after the account allegedly became delinquent.

13.     In or about November 2010, CRA telephoned Ms. Sumerix and a female CRA employee left the following message on Ms. Sumerix's voice mail: "Hi, this is [name unintelligible]. I'm with the offices of CRA. This message is for Angela Sumerix. This is in regarding [multi-digit number unintelligible]. Angela, we are not sure if you're aware of what's going on here or the situation, but it is imperative that you contact my office immediately. I can be reached at 877-704-9452. At this point I do need to speak to either you or your representative immediately. Again, my office number is 877-704-9452."

14.     The recorded message left by CRA on Ms. Sumerix's voice mail conveyed information regarding a debt directly or indirectly to Ms. Sumerix.

15.     The recorded message left by CRA on Ms. Sumerix's voice mail was a "communication" as the term is defined and/or used in the FDCPA and MOC.

16.     CRA left a recorded message on Ms. Sumerix's voice mail that did not disclose in the message that the telephone call was from a debt collector.

17.     By failing to disclose in a recorded message left by CRA on Ms. Sumerix's voice mail that the caller was a debt collector, CRA violated the FDCPA, 15 U.S.C. § 1692e(11).

18.     When CRA left the recorded message for Ms. Sumerix on his voice mail, CRA

4

was aware or should have been aware of multiple published federal district court opinions in which the courts held that it is unlawful for a debt collector to leave a recorded message for a debtor/consumer without identifying itself as a debt collector. *See Joseph v. J.J. Mac Intyre Companies, L.L.C.*, 281 F.Supp.2d 1156 (N.D. Cal. 2003); *Hosseinzadeh v. M.R.S. Associates, Inc.,* 387 F.Supp.2d 1104 (C.D. Cal. 2005); *Foti v. NCO Financial Systems, Inc.,* 424 F.Supp.2d 643 (S.D.N.Y. 2006).

19. CRA has been sued multiple times in United States District Court for allegedly violating the FDCPA by leaving a recorded message on a consumer's voice mail or telephone answering machine without disclosing in the message that the telephone call was from a debt collector.

20. In November 2010, it was the practice of CRA in connection with the collection of debts to leave a recorded message on the consumer's voice mail or telephone answering machine without disclosing in the message that the telephone call was from a debt collector.

21. In November 2010, CRA when telephoning consumers in connection with the collection of a debt regularly left a message on the consumer's voice mail or telephone answering machine which message failed to disclose that the caller was a debt collector.

22. CRA left a recorded message on Ms. Sumerix's voice mail that did not disclose in the message that the telephone call was from "Consumer Recovery Associates LLC."

23. CRA left a recorded message on Ms. Sumerix's voice mail that did not include a meaningful disclosure of the caller's identity, which violated the FDCPA, 15 U.S.C. § 1692d(6).

24. In November 2010, it was the practice of CRA in connection with the collection of debts to leave a recorded message on the consumer's voice mail or telephone answering

5

machine which message did not disclose that the telephone call was from "Consumer Recovery Associates LLC."

25.     In November 2010, CRA when telephoning consumers in connection with the collection of a debt regularly left a message on the consumer's voice mail or telephone answering machine which message did not disclose a that the telephone call was from "Consumer Recovery Associates LLC."

26.     In November 2010, it was the practice of CRA in connection with the collection of debts to leave a recorded message on the consumer's voice mail or telephone answering machine which message simply disclosed that the telephone call was from "CRA."

27.     In November 2010, CRA when telephoning consumers in connection with the collection of a debt regularly left a message on the consumer's voice mail or telephone answering machine which message simply disclosed that the telephone call was from "CRA."

28.     CRA left a recorded message on Ms. Sumerix's voice mail that did not reveal in the message the purpose of the telephone call.

29.     CRA left a recorded message on Ms. Sumerix's voice mail that concealed the purpose of the communication.

30.     The recorded message left by CRA on Ms. Sumerix's voice mail concealed or did not reveal the purpose of the communication, which violated the MOC, M.C.L. § 339.915(e).

31.     In November 2010, it was the practice of CRA in connection with the collection of debts to leave a recorded message on the consumer's voice mail or telephone answering machine which message concealed or did not reveal the purpose of the telephone call.

32.     In November 2010, CRA when telephoning consumers in connection with the

6

collection of a debt regularly left a message on the consumer's voice mail or telephone answering machine which message concealed or did not reveal the purpose of the telephone call.

33. In the one-year period immediately preceding the filing of this complaint, CRA left recorded messages on the voice mail or telephone answering machine of more than one hundred consumers residing within the State of Michigan, failing to disclose in the message that the communication was from a debt collector.

34. In the one-year period immediately preceding the filing of this complaint, CRA left recorded messages on the voice mail or telephone answering machine of more than one hundred consumers residing within the State of Michigan, without making a meaningful disclosure in the message of the caller's identity.

35. In the one-year period immediately preceding the filing of this complaint, CRA left recorded messages on the voice mail or telephone answering machine of more than one hundred consumers residing within the State of Michigan, simply stating in the message that the telephone call was from "CRA."

36. In the one-year period immediately preceding the filing of this complaint, CRA left recorded messages on the voice mail or telephone answering machine of more than one hundred consumers residing within the State of Michigan, which messages concealed or did not reveal the purpose of the telephone call.

37. The CRA employee violated CRA company policy when the CRA employee left a message on Ms. Sumerix's voice mail or telephone answering machine and did not disclose in the message that the telephone call was from a debt collector.

38. The CRA employee did not violate CRA company policy when the CRA

7

employee left a message on Ms. Sumerix's voice mail or telephone answering and did not disclose in the message that the telephone call was from a debt collector.

39.    The CRA employee violated CRA company policy when the CRA employee left a message on Ms. Sumerix's voice mail or telephone answering machine and simply disclosed in the message that "CRA" was the name of the company placing the telephone call to Ms. Sumerix.

40.    The CRA employee did not violate CRA company policy when the CRA employee left a message on Ms. Sumerix's voice mail or telephone answering machine and simply disclosed in the message that "CRA" was the name of the company placing the telephone call to Ms. Sumerix.

41.    The CRA employee violated CRA company policy when the CRA employee left a message on Ms. Sumerix's voice mail or telephone answering machine and did not reveal in the message the purpose of the telephone call.

42.    The CRA employee did not violate CRA company policy when the CRA employee left a message on Ms. Sumerix's voice mail or telephone answering machine and did not reveal in the message the purpose of the telephone call.

43.    The CRA employee violated CRA company policy when the CRA employee left on Ms. Sumerix's voice mail or telephone answering machine the message that is described above in Paragraph 13 of this complaint.

44.    The CRA employee did not violate CRA company policy when the CRA employee left on Ms. Sumerix's voice mail or telephone answering machine the message that is described above in Paragraph 13 of this complaint.

8

45. In November 2010, Ms. Sumerix spoke by telephone with a CRA employee. In the ensuing conversation, the CRA in efforts to collect the alleged debt made statements that were false and unfair, violating the FDCPA and MOC.

46. CRA failed to send Ms. Sumerix a timely and written notice of her rights as required by the FDCPA, 15 U.S.C. § 1692g.

47. The CRA employee intended to speak the words she spoke when she left on Ms. Sumerix's voice mail or telephone answering machine the message that is described above in Paragraph 13 of this complaint.

48. The acts and omissions of CRA and its employees done in connection with efforts to collect a debt from Ms. Sumerix were done intentionally and wilfully.

49. The acts and omissions of Mr. Fox done in connection with efforts to collect a debt from Ms. Sumerix were done intentionally and wilfully.

50. CRA and its employees have intentionally and wilfully violated the FDCPA and MOC.

51. Mr. Fox has intentionally and wilfully violated the FDCPA and MOC.

52. CRA and Mr. Fox have, as a business practice, chosen to repeatedly flout and violate the FDCPA and other laws, harming consumers, and disadvantaging competing debt collectors who have chose to abide by the FDCPA and other laws.

53. As an actual and proximate result of the acts and omissions of defendants and their employees, plaintiff has suffered actual damages and injury, including but not limited to, fear, embarrassment, stress, mental anguish, emotional stress, and suffering for which he should be compensated in an amount to be established by jury and at trial.

9

**V.    Claims for Relief**

### Count 1 – Fair Debt Collection Practices Act

54.    Plaintiff incorporates the foregoing paragraphs by reference.

55.    Defendants have violated the FDCPA.  Defendants' violations of the FDCPA

include, but are not necessarily limited to, the following:

a)    Defendants violated 15 U.S.C. § 1692d by engaging in conduct, the natural

consequence of which is to harass, oppress, or abuse a person in connection with

the collection of a debt;

b)    Defendants violated 15 U.S.C. § 1692e by using false, deceptive and misleading

representations and means in connection with the collection or attempted

collection of a debt;

c)    Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means

to collect or attempt to collect a debt from plaintiff; and

d)    Defendants violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)    Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)    Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)    Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)    Such further relief as the court deems just and proper.

### Count 2 – Michigan Occupational Code

56.    Plaintiff incorporates the foregoing paragraphs by reference.

57.    Defendants have violated the MOC.  Defendants' violations of the MOC

10

include, but are not necessarily limited to, the following:

a)   Defendants violated M.C.L. § 339.915(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

b)   Defendants violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

c)   Defendants violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened and (ii) the legal rights of a creditor or debtor;

d)   Defendants violated M.C.L. § 339.915(g) by communicating with a debtor without accurately disclosing the caller's identity;

e)   Defendants violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee; and

f)   Defendants violated M.C.L. § 339.918.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)   Actual damages pursuant to M.C.L. § 339.916(2);

b)   Treble the actual damages pursuant to M.C.L. § 339.916(2);

c)   Statutory damages pursuant to M.C.L. § 339.916(2); and

d)   Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

11

**Demand for Trial by Jury**

Plaintiff demands trial by jury.

Dated: November 19, 2010

Phillip C. Rogers (P34356)
Attorney for Plaintiff
40 Pearl Street, N.W., Suite 336
Grand Rapids, Michigan 49503-3026
(616) 776-1176
ConsumerLawyer@aol.com

12